# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TULSA SPECIALTY HOSPITAL, LLC, ) <br> d/b/a KINDRED HOSPITAL TULSA, ) <br> ) <br>     Plaintiff, ) <br> ) <br> v. ) <br> ) <br> BOILERMAKERS NATIONAL ) <br> HEALTH AND WELFARE FUND, ) <br> ) <br>     Defendant/Third-Party Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CONNECTICUT GENERAL ) <br> CORPORATION, d/b/a CIGNA, ) <br> ) <br>     Third-Party Defendant. ) | Case No. 12-CV-252-GKF-FHM |

## OPINION AND ORDER

Before the court is the Motion for Remand [Dkt. #18] filed by plaintiff, Tulsa Specialty Hospital, LLC d/b/a Kindred Hospital ("Kindred Hospital"). Kindred Hospital sued defendant Boilermakers National Health and Welfare Fund (the "Fund") in Tulsa County District Court based on alleged misrepresentations the Fund made regarding availability of insurance coverage for one of Kindred Hospital's patients. [Dkt. #2-4, Petition].

The Fund removed the case to federal court, asserting both diversity and federal question jurisdiction. [Dkt. #2, Notice of Removal]. Subsequently, it filed a Third Party Complaint against the plan administrator, Connecticut General Corporation, d/b/a CIGNA. [Dkt. #16].

In its Motion for Remand, Kindred Hospital alleges that neither diversity nor federal question jurisdiction exists, and the case was improperly removed to federal court.

## I. Allegations of the Petition

Kindred Hospital is a limited liability company organized under the laws of the State of Delaware, doing business at 3219 South 79th East Avenue in Tulsa. [Dkt. #2-4, Petition, ¶5]. Upon information and belief, the Fund is an employee welfare benefit plan organized and existing under the provisions of ERISA, 29 U.S.C. §§ 1001-1461, with its principal place of business located in Kansas City, Kansas. [*Id.,* ¶6].

From April 28, 2010, to November 8, 2010, a Fund subscriber (the "Subscriber")[1] was a patient at Kindred Hospital. [*Id.,* ¶9]. Prior to the Subscriber's admission, on April 23, 2010, "Regina" of Kindred Hospital contacted the Fund's agent and third-party administrator, Cigna Corporation ("Cigna"), to verify insurance coverage for the Subscriber. [*Id.*]. On the Fund's behalf, a Cigna representative named Heather confirmed that the Subscriber was eligible for coverage, and that Kindred Hospital would receive 100 percent of the rate set forth in the contract between Kindred Hospital and Cigna, given that the deductible and out-of-pocket maximum had been met. [*Id.*].

As directed by Cigna, Kindred Hospital then contacted Cigna's case management department for pre-authorization of the services to be provided. A Cigna representative, Sue Bowers, authorized the services to be provided to the Subscriber. [*Id.,* ¶10]. In reliance on the representations of coverage made by the Fund's agent, Kindred Hospital admitted the Subscriber and provided him with care and treatment. [*Id.,* ¶11]. Kindred thereafter faxed medical updates to Bowers on an ongoing basis. In response, Bowers continuously authorized the services being provided. [*Id.*].

On June 24, 2010, Bowers approved the Subscriber for another seven days of coverage, but stated that a discharge plan needed to be in place by June 30. [*Id.,* ¶12]. On June 29, 2010,

---

[1] For purposes of patient confidentiality, the Petition does not identify the Subscriber. [Dkt. #2-4, ¶3].

Bowers advised Kindred Hospital that the Subscriber had exhausted his coverage as of June 14, and that she was closing her file. [*Id.*]. Kindred was unable to safely discharge the Subscriber at that time, as his condition was unstable and no safe discharge option was available. [*Id.*].

Based on the representations of coverage and payment made by the Fund's agent, Kindred Hospital billed the Fund for the care and treatment provided to the Subscriber, totaling $723,318.74]. [*Id.,* ¶13]. When Cigna did not receive timely payment of its billed charges, it contacted Cigna, the Fund's agent and third-party administrator, to request payment. [*Id.,* ¶14]. Sheryl Cappa of Cigna responded to this request on August 8, 2011, notifying Kindred Hospital that Cigna had repriced Kindred Hospital's claim to allow 194 days at the contractual per diem rate, and that the claim had been sent to the Fund for payment. [*Id.*]. Cappa further stated that Kindred Hospital should contact the Fund regarding any failure to pay its claim. [*Id.*].

On August 8, 2011, Kindred Hospital contacted the Fund and requested payment of its claims as authorized by the Fund's third-party administrator. In response, the Fund claimed that the Subscriber's coverage had terminated as of July 21, 2010, and that the Subscriber's lifetime maximum had been exhausted by the time the Fund received Kindred Hospital's claims. [*Id.,* ¶15]. The Fund refused, however, to provide Kindred Hospital with any documentation to support these assertions. [*Id.*].

To date, Kindred Hospital "has not been paid a dime" for the services it rendered to the Subscriber in good faith from April 28, 2010, to November 8, 2010. [*Id.,* ¶16].

Kindred Hospital asserts claims for fraudulent misrepresentation, negligent misrepresentation, false information negligently supplied for the guidance of others and promissory estoppel against the Fund, and seeks damages in excess of $700,000. [*Id.,* ¶¶17-51].

3

## II. Diversity Jurisdiction

The Petition alleged, based on information and belief, that the Fund, a welfare benefit plan organized and existing under ERISA, has its principal place of business in Kansas City, Kansas. [Dkt. #2-4, ¶6]. In an affidavit attached to the Notice of Removal, Richard L. Calcara, the Executive Administrator of the Fund, averred that the Fund maintains its administrative offices in Kansas City, Kansas, and maintains no office in either the State of Oklahoma or the State of Delaware. [Dkt. #2-1]. [*Id.,* ¶3]. Calcara stated that the Fund and its assets are managed by a Board of Trustees, consisting of 15 trustees, none of whom are residents or citizens of Oklahoma or Delaware. [*Id.,* ¶¶4-5]. The Fund contended, based on the Calcara affidavit, that the parties are diverse.

Kindred Hospital, however, asserts diversity jurisdiction is lacking because it and the Fund are both considered citizens of the Commonwealth of Kentucky and/or the State of Missouri.

In order for diversity jurisdiction to exist, no plaintiff may be a citizen of the same state as any defendant. *Salt Lake Tribune Publi'g Co., v. AT&T Corp.,* 320 F.3d 1081, 1096 (10nth Cir. 2003). "The courts must rigorously enforce Congress' intent to restrict federal jurisdiction in controversies between citizens of different states." *Miera v. Dairyland Ins. Co.,* 143 F.3d 1337, 1339 (10th Cir. 1998). The presumption is therefore "against removal jurisdiction." *Laughlin v. Kmart Corp.,* 50 F.3d 871, 873 (10th Cir. 1995). "[R]emoval statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand." *Martin v. Franklin Capital Corp.,* 251 F.3d 1284, 1290 (10th Cir. 2001), *cert. granted,* 544 U.S. 998 (2005), *aff'd,* 546 U.S. 132 (2005). As the party invoking the federal court's jurisdiction in this case, the Fund bears the burden of establishing that the requirements

for the exercise of diversity jurisdiction are present.  *Martin,* 251 F3d at 1290, citing *Huffman v. Saul Holdings Ltd. P'ship,* 194 F.3d 1072, 1079 (10th Cir. 1999).

In *Lenon v. St. Paul Mercury Ins. Co.,* 136 F.3d 1365, 1372 (10th Cir. 1998), the Tenth Circuit held that for purposes of diversity jurisdiction, an ERISA benefit plan is a trust and is a citizen of every state of which its trustees are citizens.  The Fund has provided Kindred Hospital with a list of its trustees and their respective states of residence. [Dkt. #18-3, Declaration of Adrianne J. Simon, ¶3].  One of the trustees, Van G. Stephens, is a resident of Kentucky.  [*Id.,* Ex. 2 to Simon Dec.].  Another trustee, Tyler Brown, is a resident of Missouri.  [*Id.*].  As a result, for diversity purposes, the Fund is considered a citizen of both Kentucky and Missouri.

The Declaration of Jeremy Ballard, Corporate Counsel for Kindred Healthcare Operating, Inc., an affiliate of Kindred Hospital, establishes that Kindred Hospital is a limited liability company, the sole member of which is RehabCare Hospital Holdings, LLC, also a limited liability company.  [Dkt. #18-2, Declaration of Jeremy Ballard, ¶2].  The sole member of RehabCare Hospital Holdings, LLC is RehabCare Group East, Inc., a Delaware corporation with its principal place of business in Kentucky.  [*Id.*].

The Fund claims, however, that the residence of RehabCare Group East, Inc., is unclear, and cites 13 cases in the last four years in which the corporation pleaded its principal place of business is Missouri.  [Dkt. #20 at 13].  Kindred Hospital counters with the Supplemental Declaration of Adrianne J. Simon and supporting documentation, which establish: (1) In June 2011, Kindred Healthcare, Inc. acquired RehabCare Group, Inc.; (2) prior to the acquisition, RehabCare Group, Inc., and its subsidiaries, including RehabCare Group East, Inc., were headquartered in Missouri; subsequent to the acquisition, RehabCare Group East, Inc., has its principal place of business in Kentucky.  [Dkt. #27].

5

The Tenth Circuit has not specifically ruled with respect to the method of determining the citizenship of a limited liability company for purposes of diversity jurisdiction.[2] However, other circuit courts have held that the citizenship of a limited liability company is the citizenship of its members. *See Dixie Aire Title Services, Inc. v. SPW, L.L.C.,* 2007 WL 464704, at *1 (W.D. Okla., Feb. 8, 2007) (citing *Johnson v. Columbia Props. Anchorage, LP,* 437 F.3d 894, 899 (9th Cir. 2006); *General Tech. Applications, Inc. v. Exro Ltda.* 388 F.3d 114, 121 (4th Cir. 2004); *GMAC Commer Credit LLC v. Dillard Dep't Stores, Inc.,* 357 F.3d 827, 828 (8th Cir. 2004); *Rolling Greens MHP v. Comcast Sch. Holdings,* 374 F.3d 1020, 1022 (11th Cir. 2004); *Belleville Catering Co. v. Champaign Market Place, LLC,* 350 F.3d 691, 692 (7th Cir. 2003); and *Handelsman v. Bedford Village Associates, Ltd. Partnership,* 213 F.3d 48, 51-52 (2nd Cir. 2000); *see also*, 15 James Wm. Moore, Moore's Federal Practice § 102.57 (3d ed. 2006)). This court, too, has held that for purposes of diversity, a limited liability company is a citizen of all states in which its members are citizens. *Brooks v. Boise Cascade LLC,* No. 08-CV-200, 2008 U.S. Dist. LEXIS 49259, at *4-*5 (N.D. Okla. June 26, 2008). For limited liability companies whose members are also limited liability companies, the court must look to the citizenship of the member's members in order to determine citizenship. *Wise v. Wachovia Secs., LLC,* 450 F.3d 265, 267 (7th Cir. 2006).

In keeping with prevailing authority, the court finds that Kindred Hospital is, for purposes of diversity analysis, a citizen of Kentucky, the current principal place of business of the parent of the sole member of the plaintiff limited liability company. Because a trustee of the

---

[2] In *Shell Rocky Mountain Production, LLC v. Ultra Resources, Inc.,* 415 F.3d 1158, 1162 (10th Cir. 2005), the court, in addressing a jurisdictional challenge, stated, "It is undisputed that Shell is a Delaware limited liability corporation (LLC) and its principal place of business is Houston, Texas. Thus, Shell is a citizen of both Delaware and Texas." There, however, the issue of whether the citizenship of a limited liability company's members can be attributed to the limited liability company was not raised by the parties or addressed by the court.

Fund is a resident of Kentucky, the court concludes the Fund is also a citizen of Kentucky. Therefore, diversity of citizenship is lacking.[3]

### III. Federal Question Jurisdiction

The Fund contends the court has jurisdiction of this case pursuant to ERISA § 502(e), 29 U.S.C. § 1132(e), which vests federal district courts with jurisdiction over civil actions under ERISA, Title I, 29 U.S.C. §§ 1001 *et seq.* [Dkt. #2, ¶5]. The Fund asserts plaintiff's claims are cognizable, if at all, only under ERISA § 502(a), 29 U.S.C. § 1132(a), which permits civil actions to be brought by a "participant" or "beneficiary" under the plan. The Fund characterizes this action as one to recover benefits under the plan. [Dkt. #2, ¶6]. It asserts that under the terms of the Plan, plaintiff is a person "who is or may be entitled to a benefit" under the plan and as such, meets the ERISA definition of "beneficiary." 29 U.S.C. § 1002(8). Additionally, the Fund alleges, upon information and belief, the Subscriber assigned and/or attempted to assign his rights to receive medical benefits provided under the plan, and thus, the plaintiff is a person designated by a participant to receive benefits and is a "beneficiary" under §1002(8). [Dkt. #2, ¶6]. The Fund alleges plaintiff's claims are "completely preempted" by ERISA. [*Id.,* ¶7].

Federal courts have jurisdiction to hear "only those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 27-28 (1983). Removal cannot be based simply on the fact that federal law may be referred to in some context in the case. *See Hospice of Metro Denver, Inc. v. Group Health Insurance of Oklahoma, Inc.,* 944 F.2d 752, 754 (10th Cir. 1991) (rejecting insurer's argument that the complaint's references to the insurance plan

---

[3] The court's conclusion would be identical even if Missouri is the principal place of business of RehabCareGroup, Inc., because another Fund trustee is a resident of Missouri.

7

"automatically relate the claim to the ERISA plan"). If the claim does not "arise under" federal law, it is not removable on federal question grounds. [*Id.*]. "The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392 (1987).

The types of ERISA claims that may be brought and the parties against whom and by whom those claims may be brought are set out in 29 U.S.C. § 1132(a), which provides that federal jurisdiction exists for actions that are (1) brought by a "participant or beneficiary" in an ERISA plan and (2) intended "to recover benefits due him under the terms of his plan, to enforce rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1). Kindred Hospital contends neither of these elements is met in this case.

>    ERISA defines a "participant" as:
>
>    …any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

29 U.S.C. § 1002(7). The term "beneficiary" is defined as:

>    …a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder.

29 U.S.C. §1002(8). The Fund argues Kindred Hospital is a "beneficiary" under ERISA because § 17.02 of its Plan provides that the Fund may, at its discretion, pay benefits directly to a provider. [Dkt. #20 at 9-10]. The court rejects this argument. The Fund has not provided the portion of the Plan which defines "beneficiary." Instead, it attaches one page of the Plan which includes a provision titled "No Alienation or Assignment of Benefits." That provision states, in pertinent part:

8

> Benefits payable hereunder shall not be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, or charge by any person. The Fund may, at its discretion, pay benefits directly to an institution in which an Eligible Individual has been admitted as an inpatient ….

[Dkt. #2-1 at 3, Excerpt of Plan Provisions]. The Fund cites no authority for its proposition that this limited language—which *prohibits* assignment of benefits by the beneficiary—makes third party providers "beneficiaries" under 19 U.S.C. § 1002(8).

Moreover, while it is true that a provider *may* have derivative standing to sue the insurer under ERISA as a result of an assignment of benefits,[4] there is no evidence before the court of an assignment, and—more importantly—none of plaintiff's claims are based on an assignment of benefits.

The critical question before the court is whether plaintiff's common law claims are preempted by § 514(a) of ERISA, 29 U.S.C. § 1144(a). That section states, "Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan…." 29 U.S.C. § 1144(a) (emphasis added).

In *Hospice of Metro Denver,* the Tenth Circuit considered this issue at length. There, the hospice had provided around the clock care for four months for the infant son of an employee of Anchor Paint and Manufacturing covered by an employee group health care plan from Blue Cross. 944 F.2d at 753. The hospice alleged it contacted Blue Cross about insurance coverage prior to admitting the infant, and was informed that coverage was available. The hospice also alleged that during the course of the infant's care, Blue Cross repeatedly assured it that the care was covered and payment would be forwarded. Following the infant's discharge from the

---

[4] *See Hospice of Metro Denver,* 944 F.2d at 753, n. 2.

9

hospice, however, Blue Cross denied coverage and payment relying on the policy's preexisting conditions provisions. *Id.*

Hospice sued Blue Cross in Colorado state court, asserting claims for detrimental reliance (later changed to promissory estoppel) and quantum meruit, as well as a claim as a third-party beneficiary. Blue Cross removed the case to federal district court and filed a motion to dismiss all claims as preempted by § 514(a) of ERISA, 29 U.S.C. § 1144(a). The district court held that although the third claim was actionable under ERISA, Hospice was not a participant, beneficiary or fiduciary of the plan pursuant to 29 U.S.C. § 1132(a)(1) and therefore did not have standing to bring a civil suit. *Id.* at 753.

On appeal, the Tenth Circuit addressed the question of whether the promissory estoppel claim was preempted by ERISA. The court reviewed jurisprudence on the meaning of the term "relate to," stating:

> We recognize the unlimited "relate to" language of ERISA's preemption provision and the expansive interpretation given the phrase by the courts. ERISA's legislative history decidedly points to Congress' intent that the act be broad and expansive. However, the "ultimate touchstone" in determining preemption is the Congressional purpose in enacting ERISA. The Act states its purpose as,
>
>> [T]o protect … participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.

*Id.* at 755 (citations omitted). Stating that "[d]enying a third-party provider a state law action based upon misrepresentations by the plan's insurer in no way furthers the purposes of ERISA," the court concluded:

> An action brought by a health care provider to recover promised payment from an insurance carrier is distinct from an action brought by a plan participant against the insurer seeking recovery of benefits due under the terms of the insurance plan.

10

> Preemption in this case would stretch the "connected with or related to" standard too far. Therefore, we hold that Hospice's action is not preempted by ERISA.

*Id.* at 756. The court reversed and remanded the district court decision with instructions to remand the case to state court for determination of the state claims originally filed in that court. *Id.*

A multitude of other courts have reached the same conclusion regarding preemption of common law claims of misrepresentation and estoppel. *See Northern Utah Healthcare Corp. v. BC Life & Health Ins. Co.,* 448 F. Supp.2d 1288, 1292 (D. Utah 2006) (holding that a plan participant's assignment of benefits to a health care provider did not preempt the provider's state court claims for promissory estoppel and misrepresentation); *Connecticut State Dental Assoc. v. Anthem Health Plans, Inc.,* 591 F.3d 1337, 1347 (11th Cir. 2009) ("[T]he existence of the assignment is irrelevant to complete preemption if the provider asserts no claim under the assignment."); *Franciscan Skemp Healthcare, Inc. v. Central States Joint Bd. Health and Welfare,* 538 F.3d 594, 597-98 (7th Cir. 2008) (assertion of ERISA preemption rejected because plaintiff did not bring claim to recover plan benefits, but rather asserted claims of negligent misrepresentation and estoppel). *Baylor University Medical Center v. Arkansas Blue Cross Blue Shield,* 331 F.Supp.2d 502, 509 (N.D. Tex. 2004) ("That Baylor could have sued as an assignee is not dispositive…[and] the court will not recharacterize Baylor as an assignee"); *Feldman's Medical center Pharmacy, Inc. v. Carefirst, Inc.,* 2010 U.S. Dist. LEXIS 64330, *14 (D. Md. 2010) ("That a provider has derivative standing from an assignment is not sufficient for complete preemption; the provider must actually assert a claim under that assignment"); *Sheridan Healthcorp, Inc. v. Neighborhood Health Partnership,* 459 F.Supp.2d 1269, 1274 (S.D. Fla. 2006) ("Even if Sheridan may have such assignments, their existence would be irrelevant because Sheridan does not rely on such assignments for the claims stated in the Complaint.");

11

*Children's Hosp. Corp. v. Kindercare Learning Ctr., Inc.,* 360 F.Supp.2d 202, 207 (D. Mass. 2005) ("As master of its own complaint, Children's Hospital had the right to assert independent causes of action regardless of the assignment.").

Here, Kindred Hospital has not sued the Fund based on an assignment of benefits under ERISA. Its claims, rather, sound in common law fraudulent misrepresentation, negligence and promissory estoppel. Consistent with the Tenth Circuit's holding in *Hospice of Metro Denver*, the court concludes Kindred Hospital's common law claims are not preempted by ERISA. Further, although the hospital may or may not have an assignment of plan benefits from the Subscriber, it asserts no claim for benefits under such an assignment. Therefore, no federal question jurisdiction exists.

## IV. Conclusion

For the foregoing reasons, plaintiff's Motion for Remand [Dkt, #18] is granted. The Clerk of the Court is directed to remand the case to Tulsa County District Court.

ENTERED this 13th day of July, 2012.

_____
GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT